# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JILLIAN HOBBS, | ) | CASE NO. 5:10CV2069 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| COUNTY OF SUMMIT, et al., | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

Before the Court is the Defendants' motion to dismiss (Doc. Nos. 40, 50)[1], Plaintiff's opposition (Doc. No. 45), and Defendants' reply (Doc. No. 46). For the reasons discussed below, the motion is **GRANTED**.

## I. BACKGROUND [2]

On September 15, 2010, Plaintiff Jillian Hobbs ("Plaintiff" or "Hobbs") filed a purported Class Action Complaint under 42 U.S.C. § 1983 against Summit County ("the County") and two of its deputy sheriffs, Scott Plymire ("Plymire") and Glenn Stott ("Stott") (collectively as "Defendants"). (Doc. No. 1.) Plymire and Stott are sued in both their individual

---

[1] When the motion was originally filed, a filing error occurred. (*See* Doc. No. 39.) The Clerk required refiling of the motion. After the Court took the motion under advisement, it discovered that the refiled motion did not include the exhibits that had been filed with the original motion. By Order dated November 23, 2011, the Court directed Defendants to file the exhibits, which they did as Doc. No. 50.

[2] This background section is constructed from a combination of the allegations in the Complaint (Doc. No. 1), various documents filed by the parties which support their respective views of the criminal proceedings before the state courts (Doc. Nos. 14, 41, 42, 44), and the public records of the Ninth District Court of Appeals of Ohio and the Supreme Court of Ohio. This Court can and does take judicial notice of these public records; therefore, to the extent Doc. Nos. 42 and 44 were filed as motions to take judicial notice, those motions are **GRANTED**. *See Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir. 2010) ("Although typically courts are limited to the pleadings when faced with a motion [to dismiss], a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment.").

and official capacities. The Complaint seeks declaratory and injunctive relief as well as compensatory and punitive damages for alleged violations of Plaintiff's federal and state constitutional rights and for state law torts. It alleges that the County's customs and policies were "a deliberate moving force behind the violations." (Compl. ¶ 2.) Plaintiff seeks relief "for losses which occurred and continue as a result of her custodial interrogation and arrest on September 16, 2009 and her continued detention pursuant to a warrant issued on that date and filed with the Clerk of the Barberton Municipal Court September 17, 2009." (Compl. ¶ 3.) All five claims for relief rest upon the following factual allegations.

On September 16, 2009, Defendant Plymire received a report from a patrol officer that a victim, Luana Scott, had reported a burglary. Plymire and his partners, Detectives Klein and Brown, went to Scott's home to confirm the report. Plymire also learned that there were two witnesses. The witnesses were interviewed and confirmed that they had seen Plaintiff entering the victim's home the day before.

Plymire went to Plaintiff's home. She was there with a male friend, Mr. Gowdy; Plaintiff invited the officers in. The officers told Hobbs and Gowdy that they were investigating a burglary and that witnesses had told them they had seen Hobbs entering the victim's home. Hobbs and Gowdy asked to go outside to speak privately and Plymire agreed. The officers also went outside, but remained far enough away from Hobbs and Gowdy to give them privacy. Then Hobbs returned, visibly upset and crying. She confessed that she had taken things from Scott's home because she had a drug problem. The detectives and Hobbs went back into her residence, while Plymire stayed outside talking to Gowdy.

Hobbs was "Mirandized." She then told the detectives that the stolen property was not in her home, but that she had heroin paraphernalia in the bathroom. Hobbs was placed under

2

arrest due to her confession. She insisted that Gowdy had nothing to do with the burglary, so he was not arrested. The officers transported Hobbs to the Summit County Jail. (Trans. of Suppression Hearing at 8-18, Doc. No. 14-3.)

On September 16, 2009, Defendant Plymire signed a complaint on a preprinted form alleging that Plaintiff, on September 15, 2009, violated O.R.C. § 2911.12 and "trespass[ed] in an occupied structure that is a permanent or temporary habitation of Laura Scott, when Laura Scott is present or likely to be present, with purpose to commit in the habitation a criminal offense; in violation of Section 2911.12 of the Revised Code." (Compl. ¶¶ 24, 25; Doc. No. 14-2.) Plymire's complaint was sworn to and subscribed before Defendant Stott, acting as a deputy clerk for the Barberton Municipal Court. Plaintiff alleges that an arrest warrant issued at the same time (Compl. ¶ 27); however, Defendants deny that allegation. (Answer ¶ 27.)

On September 17, 2009, the criminal complaint against Plaintiff was filed with the Clerk of the Barberton Court. (Compl. ¶ 31.) Plaintiff asserts that the alleged arrest warrant "was void ab initio and in violation of the Fourth and Fourteenth Amendment and Ohio constitutional and statutory law." (Compl. ¶ 36.)

While Plaintiff was detained pursuant to the alleged arrest warrant, a Summit County deputy sheriff appeared before the County grand jury. As a direct result, Plaintiff was indicted on October 1, 2009 for one count of burglary in violation of O.R.C. § 2911.12. The case was assigned Case No. 2009 09 2902 in the Summit County Court of Common Pleas and the proceedings are all a matter of public record. (Compl. ¶ 37.)

A motion to dismiss and to suppress was filed in the state criminal case (Doc. No. 44-2 at 14-17), which the state opposed (Doc. No. 44-2 at 20-23.) On February 25, 2010, after a

3

hearing,[3] the state court judge denied the motion. He determined that "an arrest warrant found to be defectively issued is a violation of rights guaranteed in the Constitution and as such warrants some type of judicial remedy." (Compl. ¶ 40; Doc. No. 14-4 at 7.) The trial court further determined that "the victim of a detention and indictment predicated on an invalid arrest warrant is not without judicial recourse and the prosecution does not escape scrutiny." (Compl. ¶ 41; Doc. No. 14-4 at 7.) The trial court concluded that, although the warrant for Plaintiff's arrest was defectively issued in violation of the Constitution, the exclusionary rule was "the relevant remedial framework governing disposition" of the motion, but that "no evidence was obtained as a direct result of the improperly issued arrest warrant." (Compl. ¶ 42; Doc. No. 14-4 at 7.) The trial court further concluded "that the invalid arrest warrant, in all likelihood, amounts to harmless error" such that Plaintiff "does not seem to have suffered any legally redressible [sic] prejudice." (Compl. ¶ 43; Doc. No. 14-4 at 8.)

The state moved for a correction of the trial judge's order. (Doc. No. 44-2 at 1-5.) Hobbs opposed the motion. (Doc. No. 44-3.) Before the trial court had ruled on the motion, on March 29, 2010, Plaintiff entered a plea of no contest to the charge of burglary and was sentenced to two years imprisonment. (Compl. ¶ 44.) She was also sentenced to a mandatory three years of post-release supervision, which, if violated, could subject her to up to nine additional months in prison. (Doc. No. 14-5.)

On May 5, 2010, Hobbs filed an appeal raising one assignment of error challenging the trial court's denial of her motion to suppress and to dismiss.[4] On June 12, 2011,

---

[3] The hearing transcript has been supplied. (*See* Doc. No. 14-3.)

[4] The Journal Entry memorializing Hobbs's change of plea from not guilty to no contest and imposing her sentence makes no mention of preserving any issue for appeal notwithstanding her plea. *See* Doc. No. 14-5. However, there is nothing in the appellate record to suggest that the state raised this issue on appeal and, therefore, the Court assumes that either the issue was preserved for appeal or the state had waived any challenge in that regard.

while her appeal was pending, Plaintiff completed her definite sentence and was released from incarceration. (Doc. No. 41.) On June 29, 2011, the Ninth District Court of Appeals (Case No. 25379) affirmed the trial court's February 25, 2010 ruling. (Doc. No. 42-1.)

Neither party has outlined the subsequent proceedings;[5] however, on September 2, 2011, Hobbs filed a notice in the Supreme Court of Ohio that the Ninth District Court of Appeals had certified a conflict pursuant to Ohio App. R. 25 as to the following question: "May a law enforcement officer, serving a dual-role as an officer and deputy clerk of a local municipal court, act as a neutral and detached magistrate for purposes of Crim. R. 4(A)?" This certified question was accepted by the Ohio Supreme Court and assigned Case No. 2011-1504. On September 19, 2011, Hobbs also filed for a discretionary appeal before the Ohio Supreme Court. On November 22, 2011, the Ohio Supreme Court accepted the appeal (Case No. 2011-1593) on Hobbs's proposition of law number 1:

> A law enforcement officer serving in a dual role as an officer and deputy clerk of a local municipal court may not act as a neutral and detached magistrate. When a warrantless arrest has occurred without showing why a warrant could not first be obtained and is followed by a "bare bones" complaint for a resulting arrest warrant for continued detention issued by operation of such dual role officer as a recurring, systemic practice, the exclusionary rule applies to all evidence directly or indirectly obtained as a result of the policy from the date the policy was implemented, not simply from the date the particular warrant issued.

On November 22, 2011, the Ohio Supreme Court ordered the two cases consolidated for briefing and allowed Hobbs forty (40) days to file her brief. Hobbs subsequently sought an extension until January 23, 2012 to file her brief.

---

[5] These subsequent proceedings have been ascertained by the Court from the public records website of the Summit County Clerk of Court.

## II. DISCUSSION

Defendants argue that the first, second, and third claims for relief (the "§ 1983 claims") must be dismissed for several reasons, first of which is lack of subject matter jurisdiction, which is always a threshold determination. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) (there is no doctrine of "hypothetical jurisdiction" that enables a court to resolve contested questions of law when its jurisdiction is in doubt). In particular, Defendants assert that under *Heck v. Humphrey*, 512 U.S. 477 (1994), there is no cognizable § 1983 claim and, therefore, no subject matter jurisdiction. Defendants also argue that the § 1983 claims should be dismissed for failure to join an indispensible party, namely, the Barberton Municipal Court. Finally, they assert that the § 1983 claims should be dismissed because Plaintiff is simply wrong that a law enforcement officer cannot serve the role of a deputy clerk to acknowledge criminal complaints and affidavits.[6] Because the Court has determined, as discussed below, that it lacks subject matter jurisdiction, it need not address Defendants other arguments.

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may involve a facial attack or a factual attack. *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). "When a Rule 12(b)(1) motion attacks the factual basis for jurisdiction, the district court must weigh the evidence and the plaintiff has the burden of proving that the court has jurisdiction over the subject matter." *Id.* (citing *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004)). A factual attack "is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "On such a motion, no presumptive truthfulness applies to the

---

[6] The three arguments raised in Defendants' motion are directed explicitly to the first, second, and third claims for relief. Without making any specific supporting argument, Defendants also assert in conclusory fashion that the fourth and fifth claims for relief, which are state law claims, should be dismissed.

6

factual allegations, *see Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990), and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

Plaintiff's § 1983 claims challenge what she styles as "the core procedural questions," that is, three allegedly unconstitutional practices of the Barberton Municipal Court: (1) so-called "bare bones" complaints which allege a crime only in statutory terms, without any supporting facts suggesting that the accused committed the crime; (2) warrants issued on complaints sworn to by one law enforcement officer before another law enforcement officer acting as a deputy clerk; and (3) failure to have probable cause determined by a neutral and detached magistrate in a reasonably prompt manner. Plaintiff claims she is not challenging either her conviction or her sentence, but only these core procedural matters. She seeks not only monetary damages for the alleged constitutional violations, but also declaratory and injunctive relief aimed at stopping these procedures in the future.

In *Heck v. Humphrey*, 512 U.S. 477 (1994),[7] the Court ruled: "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*. at 487. Of course, Plaintiff cannot demonstrate that her conviction or sentence has been invalidated because her criminal appeal is currently pending

---

[7] In *Heck*, the petitioner was convicted in state court of involuntary manslaughter and was serving a 15-year prison sentence. While the appeal from his conviction was pending, he brought a *pro se* § 1983 action against two county prosecutors and an investigator with the state police alleging that they had "engaged in an 'unlawful, unreasonable, and arbitrary investigation' leading to petitioner's arrest; 'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved [petitioner's] innocence'; and caused 'an illegal and unlawful voice identification procedure' to be used at petitioner's trial." *Heck*, 512 U.S. at 479. The complaint sought monetary damages, but neither injunctive relief nor release from custody.

before the Ohio Supreme Court. For purposes of the *Heck* analysis, that fact is not relevant if this Court determines that a judgment in her favor on any or all of her three core procedural claims would not necessarily imply the invalidity of her conviction or sentence.

Although Plaintiff claims not to be challenging either her conviction or sentence, the Court nonetheless concludes that *Heck* is applicable. As pointed out in *Schilling v. White*, 58 F.3d 1081 (6th Cir. 1995), the Court in *Heck* "examined the common law of tort liability and concluded that proof of the illegality of a conviction is a necessary element of the § 1983 cause of action." *Id*. at 1086. "Unless that conviction has been reversed, there has been no injury of constitutional proportions, and thus no § 1983 suit may exist." *Id*.

Plaintiff pled no contest to the charge of burglary *after* the state trial court denied her motion to suppress the arrest and dismiss the indictment on the very same grounds that she raises here as her "core procedural questions." (*See* Doc. No. 44-2 at 14-17.) Although the trial court actually agreed with Plaintiff that the warrant for her arrest was not properly issued, it concluded (1) that this would not bar further prosecution because an illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction; and (2) that Hobbs's sole remedy in the criminal context was the exclusionary rule and, since no evidence had been obtained as a result of the improperly issued arrest warrant, there was no evidence to exclude. The trial court further concluded that "the invalid arrest warrant, in all likelihood, amount[ed] to harmless error." (Doc. No. 14-4.) These very conclusions, as well as the trial court's refusal to grant dismissal of the indictment are currently on appeal before the Ohio Supreme Court, as are Plaintiff's challenges to the procedures used to acknowledge criminal complaints in the Barberton Municipal Court.

This Court concludes that, if it were to proceed with this case and ultimately determine that the procedures challenged by Plaintiff do violate the constitution, that judgment would implicate the validity of Plaintiff's conviction for burglary. Therefore, *Heck* applies. Since Plaintiff cannot show that her conviction or sentence has been invalidated, there is no cognizable § 1983 cause of action.

Another very important fact of this case makes *Heck* applicable. When a defendant pleads guilty (or no contest as in this case), a Fourth Amendment challenge "is not cognizable under the rule of *Heck* [...]." *Martin v. Girard*, No. 98-1215, 2000 WL 658326, at *2 (6th Cir. May 12, 2000). This is so because "[a] finding of a Fourth Amendment violation concerning the [defendants'] arrests would necessarily imply the invalidity of their convictions; thus, their unlawful arrest claims are not cognizable under § 1983 because their convictions have not been reversed, expunged, or invalidated by any court." *Id*. (citing *Heck*, 512 U.S. at 486-86; *Schilling*, 58 F.3d at 1086 (Fourth Amendment claim precluded by subsequent conviction)).

Further, "[i]n the event that *Heck* cannot be applied because of the short sentences and fines arising from the [defendants'] eventual guilty-plea convictions [...] then--in the alternative--the [defendants] are precluded from seeking damages by their guilty pleas, which have a *res judicata* effect." *Id*. (citing *Walker v. Schaeffer,* 854 F .2d 138, 142-43 (6th Cir. 1988) (nolo contendere pleas estopped plaintiffs from asserting lack of probable cause in their suit claiming false arrest and imprisonment)). The same rule applies to any attempt to seek injunctive or equitable relief because "[a] favorable ruling on [the request] for declaratory and injunctive

relief would necessarily imply that [their] convictions [...] were invalid." *McDonald v. Tennessee*, 79 F. App'x 793, 795 (6th Cir. 2003).[8]

### III. CONCLUSION

For the reasons discussed herein, Defendants' motion to dismiss for lack of subject matter jurisdiction (Doc. No. 40) is **GRANTED**. Because there is lack of subject matter jurisdiction, the Court need not address any of Defendants' other arguments.

**IT IS SO ORDERED**.

Dated: February 1, 2012

                                   **HONORABLE SARA LIOI**
                                   **UNITED STATES DISTRICT JUDGE**

---

[8] In addition, the Court notes that, even if there were a cognizable § 1983 claim, abstention and staying the proceedings would be required under the teachings of *Younger v. Harris*, 401 U.S. 37 (1971). Plaintiff's assertions before this Court are the very same as those she is raising before the Ohio Supreme Court. Under *Younger*, this Court cannot interfere with appeal proceedings pending in a state court, nor can it presume that the state court will fail to protect Plaintiff's federal constitutional rights. It would be completely inappropriate to allow Plaintiff an end-run around the pending state proceedings by ruling on the merits of her claim that the procedures leading to her arrest and detention were unconstitutional and, if so, warranted an award of damages. Nor should this Court determine that injunctive or declaratory relief should be awarded.